UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| AYANA POWERS-TAYLOR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:18-CV-117 NAB |
| ) | |
| ASCENSION HEALTH, INC., ) | |
| ) | |
| Defendant. ) | |

# MEMORANDUM AND ORDER

This matter is before the Court on Defendant Ascension Health Alliance d/b/a/ Ascension's ("Ascension") Motion for Summary Judgment, filed September 21, 2018. (Doc. 44). The motion is fully briefed and ready for disposition. The Court will grant Defendant's motion.

# BACKGROUND[1]

At all relevant times Plaintiff Ayana Powers-Taylor was employed as a Medical Assistant at Sacred Heart Health System ("Sacred Heart"), in Pensacola, Florida. (Doc. 46 at 1, 4). As a Medical Assistant, Plaintiff's responsibilities included assisting with treatments ordered by physicians and nurse practitioners, interviewing patients, measuring vital signs, and recording information on patients' charts. Plaintiff has an associate's of science degree in

---

[1] The undersigned notes that, in compliance with Local Rule 7—4.01, Defendant has filed a Statement of Uncontroverted Material Facts ("SOF"), setting forth each fact in a separately numbered paragraph with appropriate citations to the record. Plaintiff, in contravention of this Court's Local Rule 7—4.01(E), had not specifically controverted any of Defendant's facts, but simply states, in her Memorandum in Opposition to Defendant's Motion for Summary Judgment (Doc. 47), that she "objects" to certain facts in Defendant's SOF. Consequently, Defendant's Statement of Uncontroverted Facts is taken as admitted by Plaintiff for purposes of the instant motion for summary judgment. *See Northwest Bank & Trust Co. v. First Ill. Nat'l Bank*, 354 F.3d 721, 724-25 (8th Cir. 2003).

medical assisting and worked as a medical assistant for more than 20 years. (AR 0108-0110, 0176-0177, 2058).[2]

Ascension was the sponsor and administrator for the self-funded Long-Term Disability Plan ("LTD Plan")[3] available to eligible employees of Sacred Heart. (AR 5, 12, 45). In accordance with the terms of the LTD Plan, Ascension delegated the discretionary authority with regard to claims administration to Sedgwick Claims Management Services, Inc. ("Sedgwick"), the Claims Administrator. (AR 17, 47).

The LTD Plan contains the following relevant definitions:

> **1.12 Disability or Disabled** means that due to an Injury or Sickness which is supported by objective medical evidence,
>
> (a)   the Participant requires and is receiving from a Licensed Physician regular, ongoing medical care and is following the course of treatment recommended by the Licensed Physician; and . . .
>
>> (1)   The Participant is unable to perform:
>>
>>> (A) during the first 24 months of Benefit payments, or eligibility for Benefit payments, each of the Material Duties of the Participant's Regular Occupation[4]; and
>>> (B) after the first 24 months of Benefits payments, or eligibility for Benefits payments, any work or service for which the Participant is reasonably qualified taking into consideration the Participant's training, education, experience and past earnings.[5]
>
> **1.26 Material Duties** means the essential tasks, functions and operations, and the skills, abilities, knowledge, training and experience generally required by employers from those engaged in a particular occupation that cannot be

---

[2] Citations designated AR refer to the administrative record filed with the Court on April 27, 2018. (Docs. 31-37). The page numbers cited are those found on the bottom right-hand corner of each page of the record.

[3] The LTD Plan is an employee welfare benefit plan, governed by the Employee Retirement Income Security Act ("ERISA").

[4] Thus, during the first 24 months of Disability, an LTD Plan participant must be unable to perform the activities she regularly performed when her Disability began, a standard known as the "Own Occupation" standard. (AR 13, 56).

[5] Thus, after the first 24 months of Disability, an LTD Plan participant must be unable to perform "any work or service for which the Participant is reasonably qualified," a standard known as the "Any Occupation" standard. (AR 7-8).

reasonably modified or omitted.

**1.40 Regular Occupation** means the activities that the Participant regularly performed when the Participant's Disability began. In addition to the specific position or job the Participant holds with the Participant's employer, Regular Occupation also includes other positions and jobs for which the Participant has training and/or education to perform in the Participant's profession at the Participant's Employer or any other employer. If the Participant's Regular Occupation involves the rendering of professional services and the Participant is required to have a professional or occupational license in order to work, the Participant's Regular Occupation is as broad as the scope of his or her license.

(AR 7-8, 11, 13).

On January 7, 2015, Plaintiff was recovering from a hysterectomy when she developed periumbilical pain, and was found to have an acute bowel injury and underwent a bowel resection. (AR 116-118, 144-145). Due to the surgery and its complications, Plaintiff received maximum short-term disability ("STD") benefits under another plan—the Ascension Short-Term Disability Payroll Program—pursuant to which Plaintiff claimed disability as of January 5, 2015. (AR 111-130, 2058). As Plaintiff approached the April 5, 2015, exhaustion date for STD benefits, her claim was transferred to Sedgwick to determine whether she qualified for Long-Term Disability ("LTD") benefits. (AR 111-130, 2068).

On April 6, 2015, Sedgwick notified Plaintiff that she had been approved for LTD benefits from April 5, 2015 until April 30, 2015. (AR 2048). The letter Plaintiff received from Sedgwick advised her that in order to qualify for future benefits, she must continue to be unable to perform the material and substantial duties of her Own Occupation, demonstrated by medical updates from her treating physicians. (AR 152-153). Plaintiff's obstetrician/gynecologist Elizabeth Dunning Tucker ("Dr. Tucker") completed an Attending Physician Statement ("APS") on April 8, 2015, in which she opined that Plaintiff was disabled from her Own Occupation due to "surgical f/u". (AR 166-168). Dr. Tucker noted that her prescribed course of

3

treatment for Plaintiff's post-operative complications was "supportive treatment with follow-up," and stated that Plaintiff's condition caused "limitations/restrictions" on her ability to lift, or to sit and stand for prolonged periods. *Id*. In response to a question asking when Plaintiff would be released to full duty work, she wrote, "pending." *Id*. Throughout 2015, Sedgwick Disability Benefits Examiner Shenitha Buchanan ("Ms. Buchanan") monitored Plaintiff's medical condition, and based on the medical information provided by Plaintiff and her treating physicians, Sedgwick continued to approve LTD benefits. (AR 2023, 2028, 2031-35, 2043-46, 2048-49).

On May 26, 2015, Dr. Tucker opined that Plaintiff continued to be disabled from her Own Occupation, but in this report, she described the primary diagnosis as "diffuse arthritis," and that Plaintiff had been referred to a rheumatologist for "severe diffuse arthritis." (AR 203-207). On May 27, 2015, Plaintiff's rheumatologist, Ellen W. McKnight ("Dr. McKnight"), submitted to Sedgwick medical records that noted a primary impression of "inflammatory polyarthritis," and that further workup is indicated to confirm a diagnosis. (AR 210-233). On June 1, 2015, Dr. Tucker submitted additional medical records, in which she opined that Plaintiff had "healed from the surgery," but that she still could not work due to arthritis. (AR 248-249). Thereafter, from June 1, 2015 through May 26, 2016, Plaintiff received LTD benefits based on a primary diagnosis of rheumatoid arthritis. (AR 270-399).

On May 26, 2016, Sedgwick warned Plaintiff that they would deny benefits if updated medical records from her treating physicians were not timely received. (AR 419-20). At the end of May, 2016, Ms. Buchanan began to question whether there was sufficient medical evidence to substantiate the existence of a disability from Plaintiff's Own Occupation, and Ms. Buchanan recommended a review of Plaintiff's case by a Nurse Case Manager ("NCM"). (AR 2004). On

June 9, 2016, after not receiving updated medical records from Dr. Tucker or Dr. McKnight, Sedgwick "soft"[6] denied Plaintiff's claim. (AR 422-23). Shortly after that, Dr. Tucker submitted further medical records indicating that Plaintiff had an upcoming MRI. (AR 430-36). Sedgwick then extended Plaintiff's benefits until the end of June, 2016, in order to await the MRI results and obtain additional medical records. (AR 2003).

On August 25, 2016, Sedgwick received medical records from Plaintiff's primary care physician, William Belk ("Dr. Belk"), indicating that Plaintifff's MRI reflected, "disc dessication without bulge at L3-4, L4-5, and L5-S1. . . otherwise negative study." Dr. Belk also noted that Plaintiff was in no acute distress, and that her primary "problem" was obesity. (AR 468-93). Shortly after this, Sedgwick again "soft" denied Plaintiff's claim due to another failure to provide medical records as required by the LTD Plan. (AR 494-95). On September 26, 2016, Dr. McKnight submitted visit notes and lab reports for Plaintiff, indicating that her physical exam of Plaintiff reflected that Plaintiff was "within normal limits" and in "no acute distress." (AR 509). Dr. McKnight characterized her impressions of Plaintiff's condition as including rheumatoid arthritis, fibromyalgia, and insomnia. (AR 510).

On October 13, 2016, Ms. Buchanan requested an NCM review of Plaintiff's file in light of the upcoming change in the disability definition applicable to Plaintiff from Own Occupation to Any Occupation. Plaintiff would be subject to the Any Occupation definition as of April 5, 2017. (AR 1983). On October 20, NCM Jennifer Jansen ("NCM Jansen") recommended extending Plaintiff's LTD benefits through December 31, 2016, based on medical records submitted by Dr. McKnight indicating ongoing challenges related to rheumatoid arthritis. (AR 1981). NCM Jansen further recommended conducting another review at the end of 2016. *Id*.

---

[6] A "soft" denial is a temporary denial with the potential to be reversed upon receipt of additional information.

Plaintiff's LTD benefits were accordingly extended through the end of 2016.

On December 9, 2016, Sedgwick requested updated medical records and a Functional Capacity Evaluation ("FCE") from Drs. McKnight and Belk. (AR 561-76). Pending receipt of the requested information, Sedgwick extended Plaintiff's LTD benefits through January 31, 2017. (AR 1973). Dr. McKnight submitted medical records in which she opined that Plaintiff remained disabled from her Own Occupation. Additionally, on January 27, 2017, Plaintiff informed Sedgwick that Dr. Belk was no longer practicing and that she was now seeing Neurologist, George Dmytrenko ("Dr. Dmytrenko"). (AR 1967-68). Dr. Dmytrenko submitted an Attending Physician Statement ("APS") on January 31, 2017, in which he diagnosed Plaintiff with migraines, but released her to work full-time without restrictions as of January 27, 2017. (AR 616-21).

On February 7, 2017, NCM Jansen reviewed Plaintiff's claim and concluded that Plaintiff's medical information did not substantiate disability beyond January 31, 2017. (AR 1960-61). As part of her review, NCM Jansen attempted to contact Dr. McKnight on February 6, 2017, but was informed that she was out of the office for a week. *Id*. NCM Jansen noted that in Dr. McKnight's last APS, submitted in December 2016, she stated that the examination of Plaintiff "did not document any tenderness, swelling, decreased range of motion, crepitus, warmth, or effusion of any joints," and that her "condition and care appear stagnant, and there are no physical exam findings to support limitations." *Id*. Accordingly, NCM Jansen recommended that benefits be denied. *Id*.

However, on February 9, 2017, Sedgwick Supervisor, Daniel Schulte ("Mr. Schulte"), declined NCM Jansen's recommendation to deny benefits, noting that Plaintiff was still reporting high levels of pain and fatigue. (AR 1959). Mr. Schulte noted that Plaintiff's treatment

records contained "very little objective findings" on which to base a determination concerning disability. *Id*. He recommended that an FCE be scheduled prior to any denial determination, in order to determine whether there existed objective evidence of disability that the treatment records lacked. *Id*. Accordingly, WorkStrategies, a medical consultant that performs FCEs, was asked to prepare an FCE for Plaintiff. *Id*.

WorkStrategies submitted Plaintiff's FCE report to Sedgwick on March 8, 2017. The FCE indicated that Plaintiff was evaluated on February 28, 2017, to determine her maximum capabilities. (AR 688-704). Her evaluation was inconclusive due to inconsistent effort with occasional/frequent carrying and self-limiting behaviors with pinching and gripping. *Id*. The results reflected that Plaintiff had the ability to occasionally lift up to 15 pounds from floor to waist, 15 pounds from waist to shoulder, carry up to 10 pounds, and push or pull up to 50 pounds. (AR 693, 782). The FCE further indicated that Plaintiff could perform occasional sitting, standing, walking, stair climbing, stooping, kneeling, crawling, and could frequently perform reaching at desk level, balancing, object handling, fingering, simple hand grasping, firm hand grasping, and fine/gross hand manipulation. (AR 688). Sedgwick requested more information from WorkStrategies regarding whether Plaintiff was capable of performing sedentary level work, and WorkStrategies submitted an addendum to the FCE stating that Plaintiff was "functioning in the SEDENTARY category of work at MINIMUM. . .." (AR 687) (emphasis in original).

After Sedgwick received and reviewed the FCE results, Ms. Buchanan recommended denial of LTD benefits beyond February 28, 2017. Her supervisor, Mr. Schulte, agreed, stating, "NCM review had previously indicated the objective medical findings did not support a continued period of disability. In order to provide a full and fair attempt we scheduled an FCE .

7

. unfortunately, the results were invalid as the associate did not cooperate with the exam. While the associate does have subjective complaints, the objective medical no longer supports a disability." (AR 1948-49). LTD benefits were denied beyond February 28, 2017. The denial letter sent to Plaintiff informed her of the results relied on in Sedgwick's review of her claim, and informed her that there was insufficient objective medical evidence to support a finding of disability. (AR 707-14).

Plaintiff appealed that decision on May 1, 2017, and submitted further medical records with her appeal. (AR 716-770). Sedgwick Appeals Specialist Sharifa Toomer ("Ms. Toomer") reviewed the appeal and recommended the denial be overturned from March 1, 2017, through April 4, 2017, the end date of the Own Occupation phase of disability for Plaintiff. (AR 683, 1938). Sedgwick reinstated Plaintiff's benefits through April 4, 2017, and advised Plaintiff that the period beyond April 4, 2017, was being referred for further review. (AR 779-80, 1937-38).

On May 4, 2017, Ms. Buchanan referred Plaintiff's claim file to a third party consultant, Genex Services ("Genex") to perform a Transferrable Skills Analysis[7] ("TSA") for Plaintiff. (AR 1935-36). The TSA reflected an analysis of Plaintiff's FCE results, her education and experience, her transferable skills, her sedentary employment options, and the estimated wages Plaintiff could expect to earn in the Pensacola, Florida, area. (AR 781-84). The TSA identified several jobs that Plaintiff could perform, given her experience, education, and physical limitations, including Hospital Admitting Clerk, Appointment Clerk, Telephone Operator, and Receptionist, with salaries comparable to her previous position. *Id*. After reviewing the TSA, Mr. Schulte concluded that Plaintiff was not eligible for benefits under the Any Occupation

---

[7] A Transferable Skills Analysis is a set of tests to determine what positions a person may fill if their previous position no longer exists, or they can no longer perform their last position.

definition of disability, as he determined that the objective medical evidence and the FCE showed that Plaintiff could perform a full range of sedentary work, at a minimum. (AR 1934). On May 17, 2017, Sedgwick sent Plaintiff a letter notifying her that as of April 5, 2017, Plaintiff no longer qualified for LTD benefits, because she did not meet the Any Occupation definition of disability. (AR 785-91).

Plaintiff appealed this denial of benefits on May 30, 2017. (AR 792-869). Included in her appeal were two additional documents not previously contained in her file: (1) a May 1, 2017, initial evaluation from Pain Management Specialist Cesar L. Llanera ("Dr. Llanera"); and, (2) the May 1, 2017, operative notes from Dr. Llanera. (AR 807-810). Dr. Llanera's evaluation assessed Plaintiff with chronic back pain, degenerative disease, lumbosacral spine, spondylosis/facet arthropathy, and obesity. (AR 807-08). Dr. Llanera suggested that Plaintiff lose weight, use hot and cold packs, stretch, use strengthening exercises, and undergo a lumbar facet joint nerve block. *Id*. The operative notes indicated that Plaintiff did undergo the nerve block. *Id*.

On June 22, 2017, Sedgwick referred Plaintiff's complete claims file for review by three Independent Physician Advisors ("IPA"). (AR 1918, 1499-1506, 1516-23, 1532-39). Rheumatologist Stacy Slaven ("Dr. Slaven") completed her review on July 3, 2017. (AR 1499-1506). On four separate occasions, Dr. Slaven attempted to contact Plaintiff's treating physicians, including Drs. McKnight, Lile, Llanera, and Brandhorst, by telephone and facsimile, but none of them returned her calls or fascimiles. (AR 1500-02). After reviewing Plaintiff's file, Dr. Slaven concluded that Plaintiff did not require restrictions or limitations as of April 5, 2017, explaining that there "is no clinical evidence indicating restrictions and limitations during the period of time under review." (AR 1505).

9

Neurologist Michael Chilungu ("Dr. Chilungu") completed his independent review of Plaintiff's claim on July 6, 2017. He too attempted to contact Plaintiff's treating physicians on multiple occasions, and none of them responded to him except for Dr. Lile, who refused a peer-to-peer discussion. (AR 1517-18). After reviewing Plaintiff's claim file, Dr. Chilungu concluded that "[t]he medical facts from the available documentation do not support that the claimant is impaired, from the perspective of neurology . . . from 4/5/17 through return to work." (AR 1521).

Howard Gratten, ("Dr. Gratten") who is board certified in physical medicine, rehabilitation, and pain management, completed his review of Plaintiff's claim on July 10, 2017. (AR 1532-39). Dr. Gratten also attempted to contact Plaintiff's treating physicians on multiple occasions, but was unable to establish contact. (1533-34). Dr. Gratten also concluded that Plaintiff was not functionally impaired beyond April 5, 2017, noting that "there is no evidence of neurological compromise." (AR 1537). He also determined that Dr. McKnight's opinion that Plaintiff was not capable of working "is not consistent with the clinical findings as there were no abnormalities of the severity that would completely preclude her ability to sustain full time gainful employment," and "[t]he medical facts do not indicate any medication side effects that would affect the claimant's occupational functioning." *Id*.

On July 12, 2017, appeals specialist Lannette Morrow ("Ms. Morrow") submitted more questions to each of the IPA's, asking whether Plaintiff's medical conditions or diagnoses required restrictions or limitations. (AR 1896-98). Each of the IPA's submitted an addendum reaffirming their conclusion that Plaintiff was not disabled from Any Occupation. (AR 1587-97, 1599-1608, 1618). Dr. Chilungu recommended that Ms. Morrow request a Neuro-Psychological IPA review, and accordingly, neuro-psychologist Elana Mendelssohn ("Dr. Mendelssohn"), was retained to conduct an independent review of Plaintiff's functionality from

a neuro-psychology perspective. (AR 1633-40). Dr. Mendelssohn concluded, after review of the claim file, that "the information does not support the presence of a functional impairment warranting restrictions from 4/5/17 through present." (AR 1639).

On August 3, 2017, Sedgwick's appeal team, consisting of six claims specialists and managers who had not been involved in Plaintiff's claim denial prior to that date, met to discuss Plaintiff's appeal. (AR 1878-79). They discussed Plaintiff's file and the independent reviews, and concluded that the denial should be upheld. *Id.* Sedgwick notified Plaintiff of this determination by letter dated August 8, 2017. (AR 1648-51).

## **SUMMARY JUDGMENT STANDARD**

The Court may grant a motion for summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

A moving party always bears the burden of informing the Court of the basis of its motion. *Celotex*, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. *Anderson*, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. *Anderson*, 477 U.S. at 255. The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. *Id*. at 249.

## DISCUSSION

The Eighth Circuit has held that, "[u]nder ERISA, a plan participant may bring a civil action to 'recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.'" *Pralutsky v. Metropolitan Life Ins. Co.*, 435 F.3d 833, 837 (8th Cir.), quoting 29 U.S.C. § 1132(a)(1)(B), *cert. denied*, 549 U.S. 887 (2006). "The district court reviews de novo a denial of benefits in an ERISA case, *unless* a plan administrator has discretionary power to construe uncertain terms or to make eligibility determinations, when review is for abuse of discretion." *Rittenhouse v. UnitedHealth Group Long Term Disability Ins. Plan*, 476 F.3d 626, 628 (8th Cir. 2007) (emphasis in original) (citation omitted); *see also Metropolitan Life Ins. Co v. Glenn*, 554 U.S. 105 (2008) (discussing the standard of review federal district courts should employ in reviewing benefits eligibility decisions under ERISA).

In the instant case, Sedgwick (through a grant of authority from Ascension) had the discretionary authority to determine eligibility for benefits and construe terms of the Plan. (AR 17, 47). The standard of review for this Court, thus, is abuse of discretion.

> Under the abuse of discretion standard, the proper inquiry is whether the plan administrator's decision was reasonable; *i.e.*, supported by substantial evidence. In considering the reasonableness of a plan administrator's fact-based disability determination, courts should consider whether the decision is supported by substantial evidence. Substantial evidence is more than a mere scintilla. It means

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Fletcher-Merrit v. NorAm Energy Corp.*, 250 F.3d 1174, 1179 (8th Cir. 2001) (internal quotation marks and citations omitted). In making its determination "a reviewing court must focus on the evidence available to the plan administrators at the time of their decision and may not admit new evidence or consider *post hoc* rationales." *King v. Hartford Life and Acc. Ins. Co.*, 414 F.3d 994, 999 (8th Cir. 2005) (internal quotation marks and citation omitted). Finally, "[a] decision supported by a reasonable explanation will not be disturbed even if another reasonable interpretation could be made or if the court might have reached a different result had it decided the matter de novo." *Phillips-Foster v. UNUM Life Ins. Co. of America*, 302 F.3d 785, 794 (8th Cir. 2002) (citation omitted). *See also Midgett v. Washington Group Intern. Long Term Disability Plan*, 561 F.3d 887, 897 (8th Cir. 2009) (emphasis in original) (internal quotation marks and citation omitted) ("The requirement that the [plan administrator's] decision be reasonable should be read to mean that a decision is reasonable if a reasonable person *could* have reached a similar decision, given the evidence before him, not that a reasonable person *would* have reached that decision."). Accordingly, the Court is not to weigh the evidence anew, and must not substitute its judgment for that of the claims administrator.

Upon consideration of the record before it, the Court cannot say that Sedgwick abused its discretion in denying Plaintiff LTD benefits. As further discussed below, the administrative record clearly shows that Defendant and Sedgwick carefully considered all the medical evidence and opinions offered by Plaintiff, and did not act in an arbitrary manner when determining the outcome of Plaintiff's claim.

As noted above, Sedgwick originally approved Plaintiff's claim for LTD benefits beginning April 5, 2015. The benefits lasted until April 4, 2017, the entire 24 month period of

disability allowable under the Own Occupation standard. In order to receive LTD benefits on April 5, 2017, and beyond, Plaintiff had the burden to provide objective medical evidence that she was unable to perform any work or service for which she was reasonably qualified considering her training, education, experience, and past earnings (Any Occupation). (AR 7-8); *see Farley v. Benefit Trust Life Ins. Co.*, 979 F.2d 653, 658-59 (8th Cir. 1992) (it is plaintiff's burden to show that she is entitled to benefits under the terms of the Plan).

As of April 2017, the physicians who had most recently treated Plaintiff were her neurologist, Dr. Dmytrenko, her primary care provider, Dr. Brandhorst, and her rheumatologist, Dr. McKnight. The treating records of these health care providers were submitted to, and considered by, Sedgwick. Dr. Dmytrenko's records did not support disability under either the Own Occupation or Any Occupation standard. Dr. Dmytrenko diagnosed Plaintiff with migraines, but released her to work full time with no restrictions on January 27, 2017. (AR 616-21). Dr. Brandhorst appears to have seen Plaintiff only once, on March 14, 2017, and the treatment notes from that visit indicate that Plaintiff appeared comfortable and alert, she exhibited normal strength and gait, and she reported that her pain was dull in both severity and quality, and was not radiating in nature. (AR 729-34).

Dr. McKnight, conversely, in an April 10, 2017, letter, opined that Plaintiff was disabled due to rheumatoid arthritis and fibromyalgia. (AR 718). Dr. McKnight referred to Plaintiff's appointment on March 1, 2017, at which Dr. McKnight noted that Plaintiff had tenderness and swelling in some of the joints of her hands and feet, and that Plaintiff reported experiencing joint stiffness and back pain. (AR 681-83). Dr. McKnight's records also indicated that Plaintiff's medications were continued at the same dose and her next office visit was scheduled for three months later. *Id.* Based on Dr. McKnight's opinion, Ms. Toomer, the Sedgwick Appeals

Specialist assigned to Plaintiff's claim, decided to overturn the previous denial of benefits for the period between March 1, 2017, and April 4, 2017, or the remainder of Plaintiff's Own Occupation disability period. Defendant argues, and the Court agrees, that this is indicative of the careful, full, and fair review Sedgwick undertook when making decisions regarding Plaintiff's claim.

When Defendant informed Plaintiff that they were reinstating her benefits through the end of the Own Occupation disability period, they also informed her that Sedgwick was referring her claim beyond April 4, 2017, for further review. Sedgwick, as part of that further review, requested that Genex conduct a TSA to analyze whether there were occupations that Plaintiff could perform. The TSA report indicated that Genex considered Plaintiff's traits, values, skill levels, specific vocational preparation, FCE (and addendum), and her "Training, Education and Experience Form." (AR 782). The TSA identified multiple jobs that Plaintiff could perform, given her experience, education, and physical limitations, including Hospital Admitting Clerk, Appointment Clerk, Telephone Operator, and Receptionist, with salaries comparable to her previous position. *Id.* (AR 782-84). After reviewing the TSA, Sedgwick Supervisor, Mr. Schulte, concluded that Plaintiff was not disabled from Any Occupation, and LTD benefits were denied. The undersigned finds that this determination was certainly based on more than a scintilla of evidence, and was not arbitrary and capricious, but rather, reasonable in light of all the evidence in Plaintiff's claims file.

After this denial, Plaintiff appealed again, and her claim was reviewed yet again. This time, four independent physician advisors (Drs. Slaven, Chilungu, Gratten, and Mendelssohn) reviewed Plaintiff's complete claims file, as discussed more extensively *supra*, and all concluded that Plaintiff was not disabled from Any Occupation after April 4, 2017.

Plaintiff argues that Sedgwick misinterpreted the FCE results provided by Genex, and that this creates a disputed material fact such that summary judgment is not appropriate.[8] However, this argument would seem to suggest that Defendant relied on only the FCE in denying Plaintiff's claim, and the record clearly indicates that such was not the case. Even if Sedgwick had misinterpreted the FCE, and the Court is not making such a determination, the FCE was but one piece of evidence relied on when examining Plaintiff's claim. Sedgwick also considered Plaintiff's medical treatment records, the reports and opinions of her physicians, the TSA, the independent reviews of Drs. Slaven, Chilungu, Gratten, and Mendelssohn, and Plaintiff's own statements, in reaching a reasonable decision that Plaintiff was not disabled under the terms of the Plan.

Plaintiff also argues that both her treating obstetrician, Dr. Tucker, and her rheumatologist, Dr. McKnight, submitted sufficient medical evidence to indicate that her conditions rendered her disabled within the meaning of the Plan. However, a plan administrator may rely on the opinions of non-treating physicians or independent file reviewers, and need not give special deference or weight to a plaintiff's treating physician's opinion. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 830-31 (2003); *Weidner v. Fed. Express Corp.*, 492 F.3d

---

[8] Plaintiff also argues that she should be allowed to proceed to trial and call as a witness Kalyn Midgett, who performed the FCE, in order to clarify the FCE results. The Court notes that this is a most unusual request in an ERISA case such as this, and Plaintiff acknowledges that discovery in ERISA cases is "sharply limited." (Doc. 47 at 12). As noted above, in an ERISA case being reviewed under the abuse of discretion standard, "a reviewing court must focus on the evidence available to the plan administrators at the time of their decision and may not admit new evidence." *King*, 414 F.3d at 999. Discovery outside of the administrative record is only permitted to establish facts regarding a conflict of interest or a procedural irregularity. *See Menz v. Proctor & Gamble Health Care Plan*, 520 F.3d 865, 871 (8th Cir. 2008). Plaintiff is not alleging any conflict of interest or procedural irregularity. The testimony of Kalyn Midgett was not before the plan administrators, and this Court may not admit such new evidence. The one case to which Plaintiff cites in support of her request to present testimony, *Blue Cross Blue Shield of Minn. v. Wells Fargo Bank, N.A.*, CV 11-2529 (DWF/KMM), 2017 WL 1373866, at *5 (D. Minn. Mar. 14, 2017), in which the trial court held a bench trial to act as "finder of fact," is entirely inapposite. In that case, the plaintiffs were alleging breach of fiduciary duties under both ERISA and the common law. Because all parties agreed that the claims were virtually the same under both ERISA and the common law, the court consolidated the bench and jury trial for evidentiary purposes. The case did not involve a denial of benefits, and the Court was not restricted to the review of an administrative record.

925, 930 (8th Cir. 2007) (plan administrator did not abuse its discretion in denying claimant disability benefits despite treating physician's opinion that the claimant was fully disabled). "When there is a conflict of opinion between a claimant's treating physicians and the plan administrator's reviewing physicians, the plan administrator has discretion to deny benefits unless the record does not support denial." *Johnson v. Metropolitan Life Ins. Co.*, 437 F.3d 809, 814 (8th Cir. 2006) (citation omitted). Here, all four physicians reviewing Plaintiff's file concluded that she was not so disabled as to require LTD benefits. They did so after noting there was little objective evidence of impairment, leaving Plaintiff's subjective complaints as evidence of her ailments. *See id.*, citing *Coker v. Metropolitan Life Ins. Co.*, 281 F.3d 793, 799 (8th Cir. 2002) (holding that providing only subjective medical opinions, which were unsupported by objective medical evidence, did not suffice to prove a claim for benefits); *see also Prezioso v. Prudential Ins. Co. of America*, 748 F.3d 797, 806 (8th Cir. 2014) (same). Under these circumstances, the Court finds Sedgwick's decision to deny Plaintiff benefits was not an abuse of discretion, and thus even if another reasonable interpretation exists, this Court, "may not simply substitute its opinion for that of the plan administrator." *Fletcher-Merrit*, 250 F.3d at 1180. *See also Midgett*, 561 F.3d at 897-98 (holding the decision to deny the plaintiff's short-term disability claim was supported by substantial evidence, as the peer reviews "accurately represent[ed] [Plaintiff's] medical record and adequately address[ed] the evidence supporting her claim for disability," but "explained that these findings did not demonstrate that [Plaintiff] was unable to perform her job duties."); *Rittenhouse*, 476 F.3d at 632 (internal quotation marks and citation omitted) ("[The Plan's] decision is supported by substantial evidence, *i.e.*, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."). Defendant's Motion for Summary Judgment must therefore be granted.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Doc. 44) is **GRANTED**, and Plaintiff's Complaint is **DISMISSED** with prejudice. An appropriate Judgment will accompany this Memorandum and Order.

Dated this 24th day of June, 2019.

_____
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE